UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:10-CR-87 JD |
| | ) | |
| ALEX KINER | ) | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is the Defendant Alex Kiner's motion for reconsideration [DE 45] of the Court's denial of his motion to suppress [DE 24]. Defendant filed his motion on October 7, 2011 and the government filed a response on October 12. On November 1, the Court held a hearing at which defense counsel and the government presented argument regarding the legal issues raised in the motion [DE 49]. For the following reasons, Defendant's motion to reconsider is denied.

## **Background**

On Tuesday, February 16, 2010, at approximately 8:00 a.m., officers of the Michigan City Police Department Narcotics Task Force, including Detective Marty Corley of the Michigan City Police Department and Agent Kevin Whitaker of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, visited 624 Donnelly Street, Michigan City, Indiana, to serve an arrest warrant for Dejavone Woods. They had information that Woods lived at that address from a packet put together by the Michigan City Police Department Narcotics Division based on information in its records. When they arrived, the officers set up a perimeter around the building and Officer Corley knocked on the front door. The door was answered by a young man whom Corley recognized as Johnnie Day. Corley explained to Day that he had a warrant for Dejavone Woods's arrest. Day stated that he lived there with his uncle and confirmed that Woods lived there as well, but stated that he had been sleeping and was not sure whether Woods was still there or if he had left. Corley then

told Day that the officers needed to come in and make sure that Woods was not there. Day acquiesced.

Officers then entered and conducted a protective sweep of the home to search for Woods. During the protective sweep, officers noticed in one of the bedrooms a handgun on an open shelf in the headboard of the bed and ammunition elsewhere in the room in plain view. The officers identified the bedroom as belonging to Defendant, and identified Defendant as a convicted felon. They obtained a search warrant and retrieved the firearm, ammunition, and other items from the bedroom. Five months later, he was charged by indictment on one count of possessing a firearm as a previously convicted felon and one count of possessing ammunition as a previously convicted felon.

Defendant moved to suppress the firearm and ammunition, challenging the validity of the search warrant on the grounds that the handgun had not been in plain view, that the search warrant application misrepresented that the handgun was in plain view, and that the warrant did not describe with particularity the place to be searched. At an evidentiary hearing, Officer Corley and Agent Whitaker testified concerning the events of February 16, 2010, including the basis for their belief that Woods lived at 624 Donnelly Street and their interactions with Johnnie Day. The Court also heard from Defendant's brother, Charlie Day, who claimed that the gun belonged to him, that he had merely hidden the gun in Defendant's headboard for safekeeping, and that he had closed a sliding door in the headboard, thus hiding the gun from plain view. The Court issued a written order on January 12, 2011, denying Defendant's motion to suppress. It held that even if it accepted Charlie Day's testimony—inconsistencies and all—it would not have invalidated the search warrant because Day's testimony was insufficient to establish that the sliding door had remained closed. Further, the

ammunition in plain view outside the headboard provided an adequate basis, in and of itself, for a search warrant.

After several delays caused by health issues associated with Defendant's original private counsel and his replacement, as well as the delay associated with Defendants efforts to retain replacement counsel, the Court scheduled a final pretrial conference for October 13, 2011. Less than a week before that conference, defense counsel filed the motion for reconsideration now before the Court. The motion asks the Court to suppress the gun and ammunition on the grounds that the officers' initial entry was justified neither by a search warrant nor by a reasonable belief that the suspect named in the arrest warrant was actually present in the home. At the October 13 conference, defense counsel requested a separate hearing to argue his motion for reconsideration, and stated that the motion was intended to resurrect the previously denied arguments for suppression as well as add new legal bases.

## **Analysis**

As an initial matter, the Court notes that Defendant's motion for reconsideration raises legal grounds for suppression not raised in the original motion to suppress or at the suppression hearing in late 2010. Because the deadline for pretrial motions—which specifically included any motion to suppress— passed on November 5, 2010, Defendant's new arguments are technically waived under Federal Rule of Criminal Procedure 12(e). Given the unique circumstances of this case, however, which include one defense counsel being forced to withdraw due to illness and further delay due to replacement counsel's own illness, the Court finds that there is good cause to grant relief from the Rule 12(e) waiver. Therefore, the Court will consider the new legal arguments in light of the evidence adduced at the December 21, 2010, suppression hearing.

The Court holds, however, that the officers were lawfully in Defendant's residence when they noticed the firearm and ammunition in plain view, and that Defendant's new argument are therefore unavailing. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 602 (1980). And once inside, "a protective sweep is justified when an agent reasonably believes, based on specific, articulable facts and the rational inferences arising from those facts, that someone who could pose a danger might be present." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Thus, Defendant's motion comes down to the question of whether the officers had a reasonable belief that Woods lived at 624 Donnelly and was present when they came to the door early on the morning of Tuesday, February 16, 2010. If so, they had the authority to enter the dwelling and search it for Woods and the evidence that flowed from that search should not be suppressed. If not, their illegal presence in the home would negate the plain view basis for the subsequent search warrant.

The Seventh Circuit has not decided what such "reasonable belief" actually entails. In *United States v. Jackson*, 576 F.3d 465, 469 (7th Cir. 2009), the court noted that the other circuits were split on the question of whether reasonable belief amounts to the same thing as "probable cause" or something less. *Id.* (citing a split between the Fifth, Sixth, Ninth, and Eleventh Circuits, on one side, and the Second, Tenth, and District of Columbia Circuits on the other). The Court stated that it "might be inclined to adopt the view of the narrow majority of our sister circuits that 'reasonable belief' is synonymous with probable cause." *Id.* But the court did not need to reach the issue because in that case the police had evidence sufficient to satisfy a probable cause standard. They had received a tip the suspect was staying at the residence and would be there the following morning;

4

when they arrived at the dwelling, the suspects' girlfriend nodded and began crying when she was asked whether the suspect was inside. *Id.*

In this case, the evidence clearly establishes the first prong of the *Payton* test: the officers had reason to believe that Woods lived at 624 Donnelly.[1] Based upon records of the Michigan City Police Department, the address was listed as his residence in a packet put together ahead of time by the narcotics division. Moreover, when Johnnie Day answered the door, he confirmed that Woods lived in the house.

The second prong is a much closer question. Defendant argues that the officers did not have any reason to believe that Woods was actually present at the Donnelly residence because, despite the fact that officers surrounded the home and banged on the doors, there was no evidence of any movements of anyone in the house other than Johnnie Day. But that did not require the police to believe that the suspect was absent, rather than merely hiding from the police. *See United States v. Beck*, 729 F.2d 1329, 1331–32 (11th Cir. 1984). On the other hand, the officers had no tip or other information, as far as the Court is aware, that Woods was actually present at his home on the morning of February 16. Rather, whatever belief the officers had that Woods was present was based only on what they observed on the scene and what they could infer from the circumstances. Were it clear that reasonable belief amounts to something less than probable cause, the Court would have little doubt that the relatively early hour gave the officers all the reason they needed: the District of Columbia Circuit has held that the reasonable belief standard was satisfied solely on the basis that

---

[1]Defendant's motion flatly asserts that "Woods was a guest in the home of Defendant," and cites *Steagald v. United States*, 451 U.S. 204, 213–14 (1981), for the proposition that officers do not have authority to search the home of a third-party even if they have probable cause to believe that a suspect is present. But there is no evidence to support the claim that Woods did not live at Defendant's residence, so the citation to *Steagald* is inapt.

officers executed an arrest warrant at 6:30 in the morning. *See United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2003). But the Seventh Circuit has both stated that the facts in *Thomas* would not have supported probable cause and implied that it is more likely to adopt a position defining reasonable belief as synonymous with probable cause. *See Jackson*, 576 F.3d at 469 & n.4. Given the only reported views of the Seventh Circuit on the matter, the Court concludes that something more than the mere early hour is required to establish a reasonable belief that a suspect is present.

In this cause, however, that something more is provided by the officers' conversation with Johnnie Day. Unlike in *Thomas*, where the police knocked, announced, and immediately entered the residence, *see* 429 F.3d at 284, the officers here did not act simply on the basis of the early hour. Rather, they knocked on the door and spoke with Johnnie Day, who answered the door. Day stated that he and Woods both lived at the residence, and further that "he wasn't sure if he was still there or not or if he had left." This was enough to arouse the officers' reasonable suspicions that Woods had likely been there when Day had fallen asleep and that Day had no reason to think that Woods had already left the house at that early hour. *See United States v. Bervaldi*, 226 F.3d 1256, 1267 (11th Cir. 2000) ("[O]fficers may presume that a person is at home at certain times of the day—a presumption which can be rebutted by contrary evidence regarding the suspect's known schedule."). Thus, based on the confirmed fact that Woods lived at the residence, the early hour, and the conversation with Day, the police had an adequate reasonable belief—even if that means probable cause—to enter the house and search for Woods in order to execute the arrest warrant.

## **Conclusion**

For these reasons, the Court holds that the officers lawfully entered the home, which was apparently the residence of both Defendant and Woods, in order to execute the arrest warrant for

6

Woods. And the Court finds no reason to alter its original ruling that the search warrant in this case was valid based on the presence of a firearm and ammunition in officers' plain view. Therefore, Defendant's motion for reconsideration is DENIED.

SO ORDERED.

ENTERED:  November 8, 2011

       /s/ JON E. DEGUILIO
Judge
United States District Court